# **EXHIBIT A**

Ryan Milun (Bar No. 043412006)
**THE MILUN LAW FIRM, LLC**
20 Commerce Drive, Suite 135
Cranford, New Jersey 07016
Phone: 862-702-5010, ext. 1001
ryan.milun@milunlaw.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| HARRY B. BUSSEY, III,<br><br>*Plaintiffs,*<br><br>v.<br><br>SYNCHRONY BANK<br><br>*Defendants.* | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br><br>Docket No.: MON-L-2825-22<br><br>*Civil Action*<br><br>**SUMMONS TO SYNCHRONY BANK** |

***FROM THE STATE OF NEW JERSEY TO:***

**Synchrony Bank**
Corporate Headquarters
777 Long Ridge Road
Stamford, Connecticut 06902

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the County listed above within 35 days from the date you received this summons, not counting the date you received it. The address for filing is: **71 Monument Park, Freehold, New Jersey 07728.** If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625-0971. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect you; you must file and serve a written answer or motion (with fee of $175 for Law Division and $175 for Chancery Division and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment

is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

> s/Michelle M. Smith
> Michelle M. Smith
> Clerk of the Superior Court

Dated: November 7, 2022

A True Copy Attest
Process Server

Ryan Milun (Bar No. 043412006)
**THE MILUN LAW FIRM, LLC**
20 Commerce Drive, Suite 135
Cranford, New Jersey 07016
Phone: 862-702-5010, ext. 1001
ryan.milun@milunlaw.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| HARRY B. BUSSEY, III, *Plaintiffs*, v. SYNCHRONY BANK *Defendants.* | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MONMOUTH COUNTY Docket No.: *Civil Action* **COMPLAINT AND JURY DEMAND** |

Plaintiff, Harry B. Bussey, III (collectively "Bussey"), with a residential address at 4 Windy Hill Lane, Atlantic Highlands, New Jersey 07716, for his complaint against defendant Synchrony Bank, with headquarters located at 170 West Election Road, Suite 125, Draper, Utah 84020 ("Synchrony") states:

## NATURE OF THIS ACTION

1. This is an action for actual damages, statutory damages, and attorneys fees for defendant Synchrony Bank's violation of the Truth In Lending Act, 16 U.S.C. § 1601 et seq. ("TILA") Synchrony Bank failed to conduct a reasonable investigation after being notified of a billing error in the form of unauthorized charges on plaintiff, Buddy Bussey's Lowe's Advantage Credit Card account, and Synchrony Bank failed to limit Bussey's liability to $50 as required by TILA for the unauthorized charges on Bussey's credit card account.

## THE PARTIES

2. Defendant, Synchrony Bank, with a corporate headquarters located at 170 West

Election Road, Suite 125, Draper, Utah 84020 is the owner of a credit card account that was opened through a Lowe's home improvements store.

3. Plaintiff, Buddy Bussey, with a residential address at 4 Windy Hill Lane, Atlantic Highlands, New Jersey 07716 was a consumer at Lowe's and had secured a Lowe's Advantage Credit Card that was managed and owned by Synchrony Bank.

## FACTS COMMON TO ALL COUNTS

4. In 2019 and 2020, Bussey was engaged in a home improvement project.

5. The home improvement project was being conducted with the help of a Lowe's approved contractor George Slater, recommended by Lowe's.

6. In connection with the home improvement project, Bussey contacted Lowe's and had opened a Lowe's Advantage Credit Card account to assist in the payment for the project.

7. The initial card that Lowe's issued to Bussey had an account number ending in 4331.

8. In around May 2020, Bussey notified Synchrony about the unauthorized use of his credit card ending in 4331.

9. As a result of the unauthorized usage of the card, the 4331 account was closed, and a new account was opened, this time with an account number ending in 5669.

10. Although there was a report of unauthorized usage, on information and belief the charges that were made on the 4331 card were inexplicably transferred to the card ending in 5669.

11. In connection with the newly issued card, which apparently had included the prior unauthorized charges as part of the balance, an additional fraud claim was made to Synchrony Bank as soon as Bussey saw his account statement and realized that there were still significant charges on his Lowe's Advantage Credit Card that were never approved.

12. In connection with the fraud "investigation" (if it can even be called an investigation) Bussey explained to Synchrony that the Lowe's authorized contractor, George Slater, had apparently made purchases on the Lowe's Advantage card of over $18,000, including cash advances, despite Bussey never giving George Slater any authority to do so.

13. In addition, the purchases, while appearing to be for the home improvement project that Bussey was then working on, was apparently for supplies, etc. that far exceeded anything needed by Bussey for his project and were going to be used by Slater on a completely different project for either himself or a different Lowe's customer.

14. Apparently, George Slater had a pattern and practice of overcharging customers for supplies and then using those supplies on subsequent projects.

15. George Slater also apparently had a practice of incurring significant unauthorized charges, including cash advances, and had done so to multiple Lowe's customers, not just Bussey.

16. All of this was explained to Synchrony at the time the fraud claim was reported.

17. Bussey never received a resolution of his fraud claim or any decision from Synchrony on whether the unauthorized charges would be removed from his account, so over the course of the next year and a half after the original fraud claim was made, Bussey continued to receive account statements from the Lowe's Advantage card ending in 5669 and periodically, Bussey would call Synchrony to try and dispute the charges and to get an answer from Synchrony as to whether the fraud claim was approved. .

18. Bussey found out that contacting an actual live person by phone was next to impossible, and when someone was finally reached, they could offer no help to Bussey.

19. Essentially, Bussey would spend an inordinate amount of time on the telephone with Synchrony wherein he would explain the situation over and over again, all to no avail.

20. Eventually, Bussey retained counsel to contact Synchrony.

21. In January 2022, a letter was sent to the Synchrony Fraud Department once again challenging the fraudulent charges – now almost two years old.

22. The January 2022 letter noted the following:

> For the Account Number ending in 5669, that is where the problem lies. Despite reporting the fraud to Synchrony Bank over a year and a half ago – immediately upon uncovering the fraud – this issue has not been resolved. From the attached recent statement, there appears to have been over $18,000 in fraudulent charges on the account, and since the accounts inception, there have been over thousands of dollars in interest and late fees. As my client has explained on numerous occasions, the charges on the account were never authorized and in fact, my client identified the culprit that improperly incurred the charges: George Slater – a Lowes approved contractor.
>
> To date, my client is still getting letters, like the one enclosed here, asking for payments on the account and despite the documented fraud, Synchrony continues to accrue late fees and interest charges on the account. This needs to stop.
>
> My client has spoken to several representatives at Synchrony Bank and Lowes about the fraudulent charges in attempts to resolve the issue, most recently on December 23, 2021, all to no avail. We are therefore requesting that you conduct an appropriate investigation into this matter, and get back to us on or before **February 28, 2022** with a resolution to this problem. Note, the only resolution that is acceptable to us is a zeroing out of the fraudulent charges with no payment due from my client, and a closing of the account.

23. Synchrony did not respond by the February 28, 2022 deadline.

24. Later, in March, after not hearing from Synchrony, a follow up phone call was made, and although Synchrony acknowledged receiving the letter from January 31, 2022, they refused to speak with counsel until a Power of Attorney was provided.

25. The Power of Attorney was provided, and it was only after a two-month delay – due to the Power of Attorney apparently "not being filed" – was counsel able to finally uncover the reasons behind the denial of the claim.

26. According to Synchrony, because the charges were made by a "Lowe's Approved

Contractor" that was apparently good enough for Synchrony to find that the charges were valid.

27. The explanations by Bussey regarding the unauthorized charges, the overcharges, and the apparent pattern and practice of George Slater to defraud Lowe's customers did not seem to matter to Synchrony.

28. Further, it did not matter to Synchrony that although George Slater was an approved contractor, he was never given any approval to actually use Bussey's Lowe's Advantage Credit Card to make purchases and he certainly wasn't approved to make purchases that far exceeded the supplies needed for the Bussey home improvement project.

29. The explanation of the denial by Synchrony provided in April 2022, was the first time that Bussey had ever learned that his original claim, now almost two years old, was actually denied – despite Bussey's repeated phone calls and correspondence with Synchrony.

30. At this time, a request was made to reopen and evaluate the original fraud claim.

31. Synchrony apparently did so, although the documents that were sent to Bussey by Synchrony requesting information on the fraud claim, were in connection with the account ending in 4331 that was already closed!

32. Synchrony never provided Bussey any documents to support the fraud claim for the account ending in 5669, so even though the fraud claim related to the 5669 account was reopened, of course, after receiving no supplemental documents (although based on the information already provided, supplemental information should have been unnecessary), the claim was denied.

33. Several additional attempts to contact Synchrony and clear up the fraud issues were made, but all to no avail.

34. Left with no choice, and faced with Synchrony's refusal to acknowledge or accept that a Lowe's Approved Contractor could engage in fraud, which is exactly what happened here,

Bussey has filed this action to get the fraudulent charges removed from his account, to close the account, and to recover all allowable damages from Synchrony for forcing Bussey to go through this painstaking process.

## FIRST COUNT
### Violation of the Fair Credit Billing Act

35. Bussey repeats the previous allegations in the complaint.

36. The unauthorized use of Bussey's credit card constitutes a "billing error" as that term is defined under the Fair Credit Billing Act, 15 U.S.C. § 1666.

37. When Bussey learned of the unauthorized charge through his account statement, he immediately contacted Synchrony to dispute the charge.

38. Bussey specifically informed Synchrony of the unauthorized charge, explained how it happened, and further explained that he never gave approval for the charges to be made -- even by the Lowe's approved contractor.

39. The information provided by Bussey was more than enough or Synchrony to understand the billing error, the amount of the billing error, and the reasons why there was a billing error on Bussey's card.

40. Bussey complied with all of the requirements of the Fair Credit Billing Act to properly and timely report the unauthorized charges.

41. Regulation Z, which implements the Fair Credit Billing Act, includes as one of its purposes to "provide a means for faire and timely resolution of credit billing disputes."

42. Subpart B of Regulation Z includes the required procedures for resolving credit billing disputes and includes an obligation for the creditor to conduct a reasonable investigation.

43. Synchrony did not conduct a reasonable investigation. In fact, Synchrony flat out ignored Bussey's explanations and simply found that the charges were valid because they were

Case 3:22-cv-07241-RK-TJB  Document 1-1  Filed 12/12/22  Page 10 of 14 PageID: 14
MON-L-002825-22  10/14/2022 11:09:08 AM  Pg 7 of 10  Trans ID: LCV20223647106

made by a Lowe's Approved Contractor.

44. Apparently, according to Synchrony, a Lowe's Approved Contract could not engage in fraud.

45. Furthermore, Synchrony failed to inform Bussey of the results of its fraud investigation until almost two years after the fraud was reported!

46. By failing to conduct an appropriate investigation and by ignoring the information provided by Bussey in connection with his timely fraud claim, Synchrony has caused Bussey to incur damages.

47. Synchrony should therefore be found liable for its violations of the Fair Credit Billing Act and the regulations implementing the Act.

**WHEREFORE**, Bussey demands judgment against Synchrony on this First Count of the Complaint as follows:

a) Actual damages;
b) Statutory damages;
c) Interest and costs of suit;
d) Counsel fees as allowed; and
e) Such other relief as the Court may deem just and proper.

## SECOND COUNT
### Violation of the "Unauthorized Use" Limitation

48. Bussey repeats the previous allegations in the complaint.

49. The Truth In Lending Act generally precludes a credit card issuer from imposing more than $50.00 in liability for an unauthorized use of a credit card.

50. The purchase by George Slater on Bussey's Lowe's Advantage Card was an "unauthorized use" as Slater was never given permission to use Bussey's credit card.

51. As part of his purchase, Slater bought excessive supplies that were not needed for

Bussey's home improvement project and even took out unauthorized cash advances, which did not provide any benefit to Bussey.

52. Bussey immediately notified Synchrony of the unauthorized use of his Lowe's Advantage Card as soon as he saw the unauthorized charges on his account statement and Bussey explained how the fraud had apparently taken place.

53. From the communications with Bussey, Synchrony had all of the information it needed to determine that the charges were indeed as a result of an "unauthorized use."

54. Because the charges were unauthorized, Bussey's liability for the charges should have been limited to no more than $50.00.

55. Instead, Synchrony has demanded in excess of $18,000 in charges and has and continues to apply interest and penalties to the unauthorized charges on the Lowe's Advantage Card.

56. By Synchrony's actions, it has violated the Truth in Lending's unauthorized use limitation contained in 15 U.S.C. § 1643, and has caused Bussey to suffer damages.

**WHEREFORE**, Bussey demands judgment against Synchrony Bank on this Second Count of the Complaint as follows:

a) Actual damages;
b) Statutory damages;
c) Interest and costs of suit;
d) Counsel fees as allowed; and
e) Such other relief as the Court may deem just and proper.

Dated: October 14, 2022  **THE MILUN LAW FIRM, LLC**
*Attorneys for Plaintiff*

By: *s/ Ryan Milun*
RYAN MILUN

## DESIGNATION OF TRIAL COUNSEL

Bussey hereby designates Ryan Milun of The Milun Law Firm, LLC as its trial counsel in this case to the extent a trial may be necessary.

Dated: October 14, 2022

**THE MILUN LAW FIRM, LLC**
*Attorneys for Plaintiff*

By: *s/Ryan Milun*
RYAN MILUN

## JURY DEMAND

Bussey hereby demands a trial by jury on all issues so triable as of right.

Dated: October 14, 2022

**THE MILUN LAW FIRM, LLC**
*Attorneys for Plaintiff*

By: *s/Ryan Milun*
RYAN MILUN

## R. 4:5-1 CERTIFICATION

RYAN MILUN, of full age, certifies as follows:

1. I am a member of the Bar of the State of New Jersey, and I am counsel with The Milun Law Firm, LLC, the attorneys for plaintiffs in this action.
2. To the best of my knowledge, information and belief, except as indicated in this paragraph, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no such action or arbitration proceeding is contemplated: N/A
3. Except as indicated in this paragraph, I am aware of no non-party who should be joined in this action or who is subject to joinder because of potential liability to any party on the basis of the same transactional facts: N/A.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: October 14, 2022

*s/Ryan Milun*
RYAN MILUN

# Civil Case Information Statement

### Case Details: MONMOUTH | Civil Part Docket# L-002825-22

| | |
|---|---|
| **Case Caption:** BUSSEY, III HARRY VS SYNCHRONY BANK | **Case Type:** OTHER Credit card fraud |
| **Case Initiation Date:** 10/14/2022 | **Document Type:** Complaint with Jury Demand |
| **Attorney Name:** RYAN MILUN | **Jury Demand:** YES - 6 JURORS |
| **Firm Name:** THE MILUN LAW FIRM, LLC | **Is this a professional malpractice case?** NO |
| **Address:** 20 COMMERCE DR STE 135 | **Related cases pending:** NO |
| CRANFORD NJ 07016 | **If yes, list docket numbers:** |
| **Phone:** 8627025011 | **Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO |
| **Name of Party:** PLAINTIFF : Bussey, III, Harry, B | **Does this case involve claims related to COVID-19?** NO |
| **Name of Defendant's Primary Insurance Company (if known):** Unknown | **Are sexual abuse claims alleged by: Harry B Bussey, III?** NO |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
   **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

| | |
|---|---|
| 10/14/2022 | /s/ RYAN MILUN |
| Dated | Signed |